UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OSMAN MOHAMED,<br><br>Defendant. | Case No. 25-MJ-209 |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

On September 5, 2025, the defendant, Osman Mohamed, an individual with a history of controlled substances offenses and probation violations, was arrested in the District of Columbia with a significant amount of controlled substances, including suspected opioids, a scale, more than $1,400 in cash, and a firearm. In light of the presumption applicable to these offenses, and considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community. For the following reasons, Mr. Mohamed should be detained pending trial.

### BACKGROUND

*The September 5, 2025 Arrest*

On September 5, 2025, at approximately 8:40 p.m., members of the Metropolitan Police Department (MPD) joined by agents from the Drug Enforcement Agency and the United States Marshals Service were patrolling in the NoMa area in a marked police vehicle. As they drove down the unit block of Patterson Street NE, they observed a silver BMW that was occupied, running and illegally parked. Specifically, the vehicle was parked directly in front of an "Emergency No Parking" sign that had the dates of 09/05/2025 to 09/09/2025 restricted and the hours restricted being "24 Hours."

The officers stopped the vehicle to make contact with the sole occupant and driver of the silver BMW, who would later be identified as Mr. Mohamed. As they stopped the car, the officers could see white smoke billowing from within the cabin of the vehicle, as the interior light was illuminated. The officers and agents exited their vehicles and could smell the odor of burnt marijuana. As the officers exited their vehicle, so did Mr. Mohamed, closing the driver's door behind him.

Officer Orr opened the driver's door and observed, in plain view, an orange tinted bottle that is consistent with Promethazine. At further inspection, Officer Orr saw that the label of the Promethazine had been tampered with, and the bottle was approximately ¼ filled (4oz in weight) with a dark in color liquid. With the rear label being observed as clearly tampered with, officers observed the following warnings label, "CAUTION: Opioid. Risk of overdose with addiction," as is consistent when Promethazine is mixed with Codeine.



Officer Orr also observed a white hand-rolled blunt with a charred tip, located in a cup next to where Mr. Mohamed was seated in the vehicle.

A further search of the vehicle revealed the following items:

- White hand-rolled blunt with a charred tip (located in a cup next to where Defendant Mohamed was seated inside the vehicle).
- Orange prescription bottle with tampered label that consisted of 119 pink / round pills stamped "K 56" (located in the center console of the vehicle).
- Black scale with green-leafy residue (located in the center console of the vehicle).
- Six (6) THC Pens (located in black satchel on driver side floorboard).
- One (1) THC Vape (located in black satchel on driver side floorboard).
- US Currency totaling $1,402.45 (located in black satchel on driver side floorboard).
    - Four (4) $100 bills
    - Fourteen (14) $50 bills
    - Fifteen (15) $20 bills
    - Two (2) $1 bills
    - One (1) 25¢
    - Four (4) 10¢
- Five (5) Mylar bags containing green-leafy substance consistent in appearance with marijuana weighing approximately 91.35g (located in a black backpack in the trunk of the vehicle).
- Three (3) multi-colored Mylar bags containing green-leafy substance consistent in appearance with marijuana weighing approximately 55.86g (located in a black backpack in the trunk of the vehicle).
- Two (2) large Mylar bags containing green-leafy substance consistent in appearance with marijuana weighing 95.22g (located in a black backpack in the trunk of the vehicle).
- One (1) canned Mylar containing green-leafy substance consistent in appearance with marijuana weighing 57.22g (located in a black backpack in the trunk of the vehicle).

In total, officers recovered approximately of 299.96g or 10.6oz of green-leafy substance.

An MPD officer tested a portion of the substance which yielded a positive color reaction to a marijuana-based product. Furthermore, a query from Drugs.com revealed that the pink round pills stamped K56 are consistent with Oxycodone Hydrochloride 10mg. Oxycodone is a Schedule II

narcotic controlled substance that requires a valid prescription, meaning it has high potential for abuse.



Finally, officers also located a Smith & Wesson M&P 40 Shield .40 caliber handgun underneath the floor mat on the right rear passenger side of the vehicle. The recovered firearm has a serial number of JCN4190. At the time of the recovery, the firearm had one (1) live round of ammunition in the chamber and six (6) rounds of live ammunition inside the magazine that had a capacity for seven (7) rounds.

A law enforcement query revealed that the silver BMW was registered to Mr. Mohamed.

## **ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C.

§ 3142(e). The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community. *See id.*

The crimes triggering such rebuttable presumptions need not be expressly included in the charging instrument. *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (holding that "the complaint need not allege a violation of one of the particular predicate offenses for the presumption to come into play.") Instead, "[if] the facts establish probable cause that the defendant has [committed such an offense], the judicial officer should give proper weight to Congress's general factual view that the defendant poses an unreasonable risk of danger to the community when applying the § 3142(g) factors." *Id.*

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-

examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

Two rebuttable presumptions apply here. Specifically, there is probable cause to believe that Mr. Mohamed committed a violation of an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act and that he committed an offense under 18 U.S.C. § 924(c). *See* 18 U.S.C. § 3142(e)(3)(A), (B). A review of the 3142(g) factors only confirms the presumption that Mr. Mohamed should be detained pending trial.

### I. The Nature and Circumstances of this Offense Merits Detention.

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention.

Mr. Mohamed is currently charged with a serious offense carrying significant penalties. For violating 18 U.S.C. § 922(g), Mr. Mohamed faces a maximum sentence of up to fifteen years' imprisonment, and for violating 21 U.S.C. § 841(a)(1), he faces a maximum sentence of up to twenty years' imprisonment. Furthermore, the government will likely seek indictment of an additional charge for Carrying a Firearm in furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). For that charge he will face a mandatory minimum sentence of 5 years' imprisonment, and a maximum of life imprisonment.

While these offenses are possessory offenses, this Court has warned against discounting the inherent danger associated with loaded firearms. "Illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community." *United States v. Blackson*, 2023 WL 1778194, at \*7. This Court routinely finds that just one such gun poses a danger to the community. *See*

*United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public). Furthermore, the firearm with which Mr. Mohamed is charged was loaded with a round in the chamber and had an extended magazine. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling.")

Moreover, Mr. Mohamed did not just possess a handgun in isolation, he did so while apparently engaged in the distribution of narcotics. This Court has repeatedly recognized the dangerousness associated with carrying a firearm in connection with drug distribution. *See, e.g.*, *United States v. Carr*, 2022 WL 13947798 (D.D.C.), 4 (slip copy) (finding the first factor weighed in favor of detention given "the combination of drug distribution *and* the illegal possession of (multiple) guns presents a serious danger to the community."); *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) ("[A]lthough the mere fact that the defendant possessed a firearm

does not constitute evidence of a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter.")

The nature and circumstances of Mr. Mohamed's offenses weigh heavily in favor of detention.

II. **The Weight of the Evidence Against the Defendant is Formidable.**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[1] The Government's case against Mr. Mohamed is strong.

From front to back, the silver BMW, which is registered to Mr. Mohamed and of which Mr. Mohamed was the sole occupant, was filled with controlled substances. In fact, many of the controlled substances and associated items were within an arms-reach of where Mr. Mohamed was sitting when he was observed by Officer Orr. The pills and scale were in the center console, six THC pens and a vape were on the driver side floorboard, and a bag with more than $1,400 cash was also located in a satchel on the driver side floorboard. Moreover, the firearm's placement

---

[1] This factor should be equally weighed. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194 at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

underneath the floor mat on the right rear passenger side of the vehicle creates the possibility that it was placed there by Mr. Mohamed upon seeing the officers approach.

This factor favors detention.

### III.     The Defendant's History and Characteristics Merit Detention.

The third factor, Mr. Mohamed's history and characteristics, likewise favors detention.

Mr. Mohamed has a history of controlled substances offenses, with three convictions involving controlled substances. But what should give the Court the greatest concern is Mr. Mohamed's prior performance under court-ordered supervision. The Pretrial Services Report identifies at least three prior revocations of probation. The Pretrial Services Report indicates that Mr. Mohamed incurred multiple probation violations in CR16001584 before his probation was eventually revoked.

As such, this history should give the Court little confidence that Mr. Mohamed could abide by any combination of conditions.

### IV.     Mr. Mohamed Presents a Danger to Our Community.

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, further weighs in favor of the government's request. This case suggests that the defendant is someone who deals drugs and possesses firearms. Mr. Mohamed's criminal history also suggests that he is undeterred by supervision.

Furthermore, the charge in this case gives rise to multiple presumptions that there is no combination of conditions that can assure the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (establishing that the indictment alone triggers the rebuttable presumption). These rebuttable presumptions underscores that Congress sought to treat such crimes extremely seriously, particularly in light of the

mandatory-minimum terms of incarceration accompanying such transgressions. Under the Bail Reform Act, 18 U.S.C. §§ 3142 et seq., "[t]he statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3rd Cir. 1985). Its legislative history also "fully supports the conclusion that Congress intended to equate drug trafficking with danger to the community." *Id.*, 775 F.2d at 507. As noted by the D.C. Circuit:

> The legislative history indicates that the rebuttable presumption covering serious drug trafficking offenses was included because: 'Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism. Furthermore, the Committee received testimony that flight to avoid prosecution is particularly high among persons charged with major drug offenses. Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and the foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.'

*United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203). Thus, in creating a presumption of pretrial detention for serious drug trafficking offenses, both the legislative history and the statutory language make clear that very "real-world" concerns lie behind the recognition of the inherent, pretrial dangers and flight risks posed by those who commit serious drug trafficking offenses, especially while in possession of firearms.

Moreover, these presumptions shift the burden of production appropriately to the defense to rebut the presumption itself. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight"

(citations omitted)). Here, the defendant's past defiance of supervision demonstrates that this presumption cannot be overcome. For these reasons, the government submits that the Court should order Mr. Mohamed's detention during the pendency of this case to protect the community.

## CONCLUSION

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   /s/ *Joshua Gold*
Joshua Gold
Tx Bar No. 24103101
Assistant United States Attorney
United States Attorney's Office for D.C.
601 D Street NW, Fifth Floor
Washington, D.C. 20530
E-mail: Joshua.Gold@usdoj.gov
Telephone: (202) 815-8965